UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| ZACHARY BILL CHAFFINS,<br>No. 458927, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:17-cv-00061 |
| | ) | CHIEF JUDGE CRENSHAW |
| v. | ) ) | |
| CHERRY LINDAMOOD, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM

Zachary Bill Chaffins, an inmate of the South Central Correctional Facility in Clifton, Tennessee, filed this *pro se, in forma pauperis* action under 42 U.S.C. § 1983 against Cherry Lindamood, Jason Medlin, Brandon Maloney, Ryan Deathrige, Rhonda Staggs, Cookie Staggs, and Jesse James, alleging violations of the Plaintiff's civil rights. (Doc. No. 1). As relief, the Plaintiff seeks injunctive relief and damages. (Id. at 5).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.      PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. §

1

1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.  Section 1983 Standard

Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983.   Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ."  To state a claim under § 1983,

2

a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

## III. Alleged Facts

The complaint alleges that, while an inmate of the South Central Correctional Facility, the Plaintiff has been held in segregation for eleven months during which time he has not been permitted to make telephone calls to his attorney, attend religious services, practice his religion, wear shoes including when outdoors during inclement weather, watch television, or utilize a law library. His visits with family are limited to once a month and must be scheduled in advance. According to the complaint, the Plaintiff has received no disciplinary infractions and should not have been housed in segregation with these restrictions. The complaint further alleges that the conditions of confinement at the facility are unsafe and include mold in the cells and exposed live wires in the showers.

The complaint also alleges that the Plaintiff has filed formal or informal grievances concerning his segregation that were ignored by Defendants Lindamood, Maloney, James, C. Staggs, R. Staggs, Medlin, and Deathridge. According to the complaint, after the Plaintiff aired his grievances, Officer f/n/u Bright "jerked [the Plaintiff] out of bed . . . and told [him] he'd better keep his mouth shut." (Doc. No. 1 at 4-5, 7-9).

## IV. Analysis

### A. Section 1983 official capacity claims for monetary damages

The Plaintiff seeks damages from the Defendants, though he does not indicate whether he is suing the Defendants in their individual or official capacities. To the extent that the Plaintiff seeks

3

damages from any Defendant in his or her official capacity, an official capacity suit is, in all respects other than the name, to be treated as a suit against the entity. Cady v. Arenac Cnty., 574 F.3d 334, 342 (6th Cir. 2009). Thus, a suit against an employee of the South Central Correctional Facility (where all Defendants are employed) is a suit against the state of Tennessee, the entity responsible for operating the facility.

The Eleventh Amendment to the United States Constitution bars claims for damages against a state, its agencies, and its employees in their official capacities unless a state has a waived its immunity. Quern v. Jordan, 440 U.S. 332, 337 (1979), overruled on other grounds by Hafer v. Melo, 502 U.S. 21, 27 (1991); see Cowan v. University of Louisville School of Medicine, 900 F.2d 936, 940 (6th Cir. 1990)("a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Tennessee has not waived its immunity. Berndt v. State of Tenn., 796 F.2d 879, 881 (6th Cir. 1986); Gross v. University of Tenn., 620 F.2d 109, 110 (6th Cir. 1980). Therefore, the Plaintiff's § 1983 claims for monetary damages against any individual Defendant in his or her official capacity are barred by the Eleventh Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 71 (1989). Thus, any such claims must be dismissed.

      **B.**    **Section 1983 failure to respond to grievances claims**

Some of the Plaintiff's § 1983 claims are premised on a Defendant's alleged lack of response to the Plaintiff's grievances and/or complaints. Although the Plaintiff may feel that his grievances were not taken seriously or handled properly, a plaintiff cannot premise a § 1983 claim on allegations that the an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place. See

4

Hewitt v. Helms, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995)); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Because a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the Plaintiff's claims based on any Defendant's failure to respond to Plaintiff's grievances do not state a claim upon which relief can be granted. These claims will be dismissed.

### C. Conditions of confinement

The Constitution does not protect a prisoner from unpleasant prison experiences. Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir.1987). Nor does the Constitution mandate comfortable conditions of confinement. Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 2400, 69 L.Ed.2d 59 (1981). However, the Eighth Amendment of the United States Constitution imposes an obligation to provide prisoners with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. Grubbs v. Bradley, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984).

The Plaintiff alleges that the conditions of his confinement are unconstitutional due to the presence of mold in his cell, exposed live wires in inmate showers, and the Plaintiff not being permitted to wear shoes while outdoors in inclement weather. However, without an allegation of injury or harm, a plaintiff does not state a viable Eighth Amendment claim. The Plaintiff here has not claimed any injury or harm as a result of the alleged conditions of his confinement. Furthermore, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v.

5

Wilson, 832 F. 2d 950, 954 (6th Cir. 1987); see McIntyre v. Phillips, No. 1:07-cv-527, 2007 WL 2986470, at *4 (W.D. Mich. Sept. 10, 2007)(recommending dismissal of *pro se* prisoner's § 1983 claim where "Plaintiff does not present any evidence that his exposure to black mold caused him anything beyond his unsubstantiated, perceived risk of future medical issues.  In his complaint, he does not allege that he has actually suffered any effects from his alleged exposure to black mold."); Leonard v. Ohio Dep't of Rehabilitation and Corr., No. 2:09-CV-961, 2010 WL 3001631, at *1 (S.D. Ohio July 30, 2010)(adopting the report and recommendation to dismiss *pro se* prisoner's Eighth Amendment claim based on exposure to black mold, finding that "Plaintiff has not come forward with evidence to show that he is presently suffering a health condition due to exposure to mold and absestos or that his future health is at risk.").

In addition, the complaint alleges that he is not not allowed to watch television.   Simply stated, there is no constitutional right to television while incarcerated.  Rawls v. Sundquist, 929 F. Supp.3d 284, 288-89 (M.D. Tenn. 1996)(citing Dede v. Baker, No. 93-2319, 1994 WL 198179, at *2 (6th Cir. May 18, 1994)).  Consequently, the Court finds that the complaint fails to states colorable Eighth Amendment claims based on the allegations pertaining to the conditions of the Plaintiff's confinement.  These claims will be dismissed.  28 U.S.C. § 1915A.

### D.     Placement in segregation

The complaint alleges that the Plaintiff should not be housed in administrative segregation because he has not had any disciplinary infractions in the past eleven months.  However, an inmate does not have a liberty interest in a particular security classification or in freedom from segregation. Miller v. Campbell, 108 F. Supp.2d 960, 963 (W.D. Tenn. 2000)(citations omitted).  The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of

6

confinement having an impact on a prisoner. See Meachum v. Fano, 427 U.S. 215, 225 (1976). In Sandin v. Conner, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the Sandin Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 486-87; see also Jones v. Baker, 155 F.3d 810, 812 (6th Cir. 1998); Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Hewitt v. Helms, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." Joseph v. Curtin, 410 Fed.Appx. 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." Harden–Bey v. Rutter, 524 F.3d 789, 794 (6th Cir. 2008). In Sandin, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. Sandin, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for a relatively short period of time does not require the protections of due process. Rimmer-Bey, 62 F.3d at 790-91; see Joseph v. Curtin, 410 Fed.Appx. 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit also has held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. See, e.g., Baker, 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot);

7

Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). But cf. Selby v. Caruso, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); Harden-Bey, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); Harris v. Caruso, 465 Fed.Appx. 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest). Based on these cases, the Court finds that the Plaintiff's eleven-month period of administrative segregation does not, under the circumstances described, constitute "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 486-87.

The Plaintiff alleges that his placement in administrative segregation subjects him to stricter restrictions on visitation, telephone communication, and religious practice than inmates who are not housed in segregation. According to the Plaintiff, these conditions constitute "an atypical hardship." First, as to the Plaintiff's claims regarding visitation, he alleges that he is able to schedule one visit a month with family. The Sixth Circuit has held that, without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. See Evans v. Vinson, 427 Fed.Appx. 437, 443 (6th Cir. 2011); Harden-Bey v. Rutter, 524 F.3d 789, 795 (6th Cir. 2008). As the Supreme Court explained in Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 156 L.Ed.2d 162 (2003), a case where it rejected a First Amendment challenge to the prison's denial of visitation, some curtailment of the freedom to associate with family and friends is expected in the prison setting:

8

> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.

Id. at 131 (internal citations omitted). Thus, the Court finds that the Plaintiff's allegations fail to demonstrate that the restrictions on family visitation as described in the complaint unreasonably restrict or impair the Plaintiff's constitutional right to communicate with family and friends.

Next, as to the Plaintiff's allegations related to attorney telephone calls, the Plaintiff concedes that, even though he is unable to make telephone calls to his attorney, the Plaintiff is permitted to communicate with his attorney by written correspondence. (Doc. No. 1 at 9). As such, the Court finds that restrictions limiting attorney telephone calls when the segregated inmate remains able to communicate with his or her lawyer by way of written correspondence does not rise to the level of "an atypical hardship."

However, as to the claims that the Plaintiff is not permitted to attend **any** religious services or practice his religion **in any way** while segregated, prisoners have a First Amendment right to practice their religious beliefs, Hudson v. Palmer, 468 U.S. 517, 523, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984). Nevertheless, this right is not unlimited. All that is required under the First Amendment is prisoners be provided "reasonable opportunities" to practice their religion. Id. Therefore, an inmate's First Amendment right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations reasonably related to legitimate penological interests. Bell v. Wolfish, 441 U.S. 520, 549-51, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979)(limited restriction against receipt of hardback books under certain circumstances was a rational response to a security problem and did

not violate the First Amendment rights of inmates); Pollack v. Marshall, 845 F.2d 656, 658-60 (6th Cir.1988) (plaintiff who challenged regulation limiting the length of prisoners' hair did not demonstrate he was prevented from practicing his religion in ways other than being required to comply with the hair length regulation failed to state a constitutional violation).

The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs, nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular inmate; the internal administration of a correctional facility is a function legitimately left to the discretion of prison administrators. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979); Procunier v. Martinez, 416 U.S. 396, 405, 94 S. Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 104 L.Ed.2d 459 (1989).

The Plaintiff claims that, while housed in segregation for eleven months, he has been denied his right to practice his religion and he has not been permitted to attend any religious services. The burden is on the Plaintiff to demonstrate that the right to practice his religion was denied. However, the complaint does not allege that, without the ability to attend religious services, the Plaintiff had an alternative means of exercising his religion. For example, the complaint does not allege that the Plaintiff may schedule appointments for individual visits with religious ministers or that Bibles or religious texts are available to inmates who request them. Based upon Plaintiff's allegations, which the Court must accept as true for purposes of PLRA screening, the Court concludes that these allegations are sufficient to state a non-frivolous First Amendment claim for purposes of the required PLRA screening. The complaint identifies Defendants Lindamood, (Doc. No. 1 at 4), Maloney (Id.

at 8), James (Id.), Medlin (Id. at 9), Deathrige (Id.), and R. Staggs (Id.) as playing some role in the denial of the Plaintiff's First Amendment rights.

### E. Retaliation claims

The complaint alleges that Officer f/n/u Bright retaliated against the Plaintiff after he pursued grievances concerning his segregation. A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999) (en banc). To establish a prima facie case of retaliation within the context of § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the first two elements, such as the adverse action was motivated at least in part by plaintiff's protected conduct. Id. at 394. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than de minimis harm resulting from it. See Ingraham v. Wright, 430 U.S. 651, 674 (1977); Thaddeus-X, 175 F.3d at 396.

The Plaintiff has not named Officer Bright as a Defendant to this action. The complaint does not allege that any of the named Defendants engaged in acts of retaliation against the Plaintiff for filing grievances about his segregation. Therefore, the Court finds that the complaint fails to state a retaliation claim upon which relief can be granted, and this claim will be dismissed.

### F. Access to law library

The complaint alleges that inmates in segregation have no access to a law library. The Plaintiff is correct in asserting that prisoners have a constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L.Ed.2d 606 (1996). An inmate who is claiming he

11

was denied access to court, however, must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id. at 351.

To demonstrate the lack of access has hindered his efforts to pursue a legal claim, an inmate must establish the prison official impeded his pursuit of a non-frivolous post-conviction or civil rights action, *i.e.*, a denial or dismissal of a direct appeal, habeas petition, or civil rights case seeking to vindicate basic constitutional rights. Lewis v. Casey, 518 U.S. at 348–354. The Plaintiff's allegation that he has been denied access to a law library while in administrative segregation lacks sufficient specificity to give rise to a constitutional deprivation. The Plaintiff has failed to allege any prejudice to this litigation, a direct appeal, a habeas petition, or any other civil rights action under 42 U.S.C. § 1983 to "vindicate basic constitutional rights." Lewis v. Casey, 518 U.S. at 354; Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir.1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation"). Therefore, the Plaintiff has failed to demonstrate a constitutional violation. Accordingly, the Plaintiff's claim that he was not provided with adequate access to a law library will be dismissed for failure to state a claim upon which relief may be granted.

## V. Conclusion

As set forth above, the Court finds that the complaint states colorable First Amendment claims against Defendants Lindamood, Maloney, James, Medlin, Deathrige, and R. Staggs pursuant to § 1983. 28 U.S.C. § 1915A. These claims survive the required PLRA screening. However, the Plaintiff's remaining claims will be dismissed for failure to state claims upon which relief can be granted. Likewise, the Plaintiff's claims for monetary damages against any individual Defendant in his or her official capacity will be dismissed.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE